497 P.2d 340 (1972)
Catherine Liggett BARR et al., Plaintiffs-Appellees,
v.
The GAME, FISH AND PARKS COMMISSION of the State of Colorado, Defendant-Appellant.
No. 71-195.
Colorado Court of Appeals, Div. I.
March 28, 1972.
Rehearing Denied April 18, 1972.
Certiorari Denied June 5, 1972.
*341 Oakley Wade, Las Animas, for plaintiffs-appellees, Catherine Liggett Barr, James M. Smith, Carrie F. Hall, Wesley Sage, Cecil and Amelia Tombleson, Olive M. Sterrett and William Walker.
Grant, Shafroth, Toll & McHendrie, Douglas McHendrie, Denver, for plaintiffs-appellees, LaMar Farms, a partnership, Ernest Hofmeister, as next friend of Brent Hofmeister and Gary Hofmeister, minors, and Atchison, Topeka and Santa Fe Ry. Co., a corp.
Gordon, Lefferdink & Legg, John J. Lefferdink, Lamar, for plaintiff-appellee The Fort Bent Ditch Co., a corp.
Berge, Martin & Clark, Warren Martin, Duke W. Dunbar, Atty. Gen., Gerald W. Wischmeyer, Asst. Atty. Gen., Denver, for defendant-appellant.
Henry, Cockrell, Quinn & Creighton, Victor Quinn, Denver, for amicus curiae, The Agricultural Ditch & Reservoir Co. and The Consolidated Mutual Water Co.
Selected for Official Publication.
COYTE, Judge.
The parties will be referred to herein as they appeared in the trial court. The Agricultural Ditch & Reservoir Company and The Consolidated Mutual Water Company *342 were allowed to file briefs and appear in oral arguments as amicus curiae.
Defendant constructed a dam on Clay Creek in Prowers County about four miles above the confluence of Clay Creek with the Arkansas River. This dam was approximately 2400 feet in length. The north side of the reservoir created by the dam was a natural ridge separating the Clay Creek Valley from the Arkansas River Valley. The dam was designed and constructed to a crest elevation of 3670 feet. The low point of a saddle in the ridge separating Clay Creek from the Arkansas Valley had an elevation of 3666 feet, or four feet lower than the top of the dam. When the dam was nearly completed a heavy rainstorm hit the area and all streams ran full. At the peak of the flow in Clay Creek at the dam site, there was a flow of approximately 158,000 cubic feet of water per second of time (cfs).
A combination of dam height and limited spillway caused water to overflow the ridge separating Clay Creek and the Arkansas River Valley. It was estimated that during the flood from 75,000 to 100,000 cfs passed over the ridge. All plaintiffs herein suffered damages from flooding, inundation, erosion, and silt deposition by the waters of Clay Creek which flowed across the saddle into the Arkansas River Valley area.
Special legislation was passed which allowed plaintiffs to file suit against defendant for damages suffered by them because of the flooding and resulting damage. Colo.Sess.Laws 1967, Ch. 149, p. 189. As a result thereof, numerous suits were filed by persons damaged by the flood resulting from the overflow of the saddle area.
At the pre-trial conference, all suits claiming damage from the alleged overflow of water where consolidated. The parties stipulated as to the amount of damages. Trial was to the court, which found for the plaintiffs, and judgment was entered for the amount of the stipulated damages and costs.
As grounds for error the defendant contends: (1) that there was no negligence on the part of the defendant which contributed to or caused the flooding; and (2) that in any event, it is not liable under the strict liability statute, in that the flooding occurred because of an act of God.
Defendant contends that it can construct its dam, without liability to itself, by constructing the same so as to handle the volume of water that had flooded Clay Creek on prior occasions; and that the trial court abolished the defense of act of God by holding that damages occasioned by this flooding were not an act of God. We disagree.
Defendant further contends that the authority granted by the legislature to sue defendant must be strictly construed and that, even if plaintiffs prevail, they are not entitled to costs, as costs were not allowed by the legislature.

I.
By use of a topographic scale model of the dam area prepared for defendant by Colorado State University, it was determined that no water would have flowed through the saddle if the dam had not been constructed.
Also, it is admitted that the spillway of the reservoir was not built according to specifications. The plans as drawn provided for a spillway discharge flow of 33,000 cfs, but, as built, the spillway would discharge only 4500 cfs.
Although the previous known high flow of water in Clay Creek was 27,500 cfs, the trial court did not base defendant's liability on this defect. Instead, it found:
"That the defendant was negligent in designing and constructing a dam with a spillway capacity which discharged a flow of water of only 4500 cubic feet per second. However, that was not the proximate cause of plaintiffs' damage because notwithstanding such negligence those damages would have resulted from *343 a flow of 158,000 cubic feet per second flow of water in Clay Creek Basin."

II.
A finding that defendant's engineers either knew or should have known of the maximum probable flood for this location but failed to design the dam and spillway to handle such a flood condition would support judgment for plaintiffs. Although the trial court made no explicit finding on this point, its resolution of this issue is implicit in its further factual findings.
This issue was resolved by the trial court's finding that defendant by the use of modern meteorological techniques could have foreseen this storm and the resultant flooding. From this finding, the court concluded that the defense of act of God was not applicable to this case.
Since this finding is supported by the evidence, we agree that the defense of act of God is inapplicable here.
C.R.S.1963, 148-5-4, provides:
"Liability of owners for damage.The owners of the reservoirs shall be liable for all damages arising from leakage or overflow of the waters therefrom or by floods caused by breaking of the embankments of such reservoirs."
This statute on absolute liability was construed in Ryan Gulch Reservoir Co. v. Swartz, 77 Colo. 60, 234 P. 1059, when the defense of act of God was raised. The court stated:
". . . An act of God . . . is a good defense in an action under this section, even though the liability imposed thereby is fixed by statute, without regard to negligence of the defendants."
In Baum v. County of Scotts Bluff, 172 Neb. 225, 109 N.W.2d 295, the court defined an act of God as follows:
"In order for a flood to come within the term act of God, it must have been so unusual and extraordinary a manifestation of nature as could not under normal conditions have been reasonably anticipated or expected. . . . An act of God does not necessarily mean an operation of natural forces so violent and unexpected that no human foresight or skill could possibly have prevented its effect. It is enough that the flooding should be such as human foresight could not be reasonably expected to anticipate and whether it comes within this description is ordinarily a question of fact." (Emphasis added)
Thus, if the flow of water which occurred in the Clay Creek Basin was reasonably foreseeable by defendant's engineers, then it may not be designated as an act of God.
As to the sufficiency of the evidence supporting the trial court's finding of foreseeability, plaintiffs' experts, Dr. Clark and Mr. Wheeler, in their testimony reviewed the development of the science of predicting floods. They showed that for approximately thirty years preceding the construction of this dam the technique of determining maximum flood by the "probable maximum precipitation" method, based on storm transposition, was generally known and used in the design of dams by engineers and hydrologists. Dr. Clark testified in detail as to the process by which a determination is arrived at in order to determine the maximum probable flood. The testimony of Dr. Clark and Mr. Wheeler was to the effect that the process of determining the maximum probable flood is a generally known and widely used technique, readily available to any engineer planning the construction of a dam. The defendant admitted that the maximum probable flood on Clay Creek is 200,000 cfs. In view of this testimony and this admission, it cannot be asserted that this flood of 158,000 cfs was not foreseeable by reasonable human intelligence. This flood was not of the magnitude of the admitted maximum probable flood for this drainage basin but only 79% of that figure. Dr. Clark's figure of 207,000 cfs for the maximum probable storm for the Clay Creek basin was based on the assumed *344 transposition of a storm which had actually occurred in 1935 at a place approximately eighty miles due north of the site of this flood.
The maximum probable storm, by definition, is both maximum and probable. It can and may occur. Dr. Clark further testified that in his opinion a reasonably competent meteorologist or hydrometeorologist should have anticipated a flood of the magnitude of the June 1965 flood in Clay Creek Basin.
On this evidence, the court found that with modern meteorological techniques, a maximum probable storm is predictable and a maximum probable flood is foreseeable. Thus being both predictable and foreseeable to the defendant in the design and construction of the dam, the defense of act of God is not available to them. In short, the flood which occurred in June of 1965 could not be classified as an act of God.
The engineers who testified for plaintiffs were admittedly experts in their field and the credibility and weight to be given to their testimony were peculiarly within the province of the trial court. The trial court found that by modern meteorological techniques defendant could have foreseen this storm. Whether or not the storm was foreseeable is a question of fact entirely within the province of the trial court who was the finder of fact in this case, and its finding on this issue will not be disturbed on review unless clearly erroneous. Broncucia v. McGee, Colo., 475 P.2d 336.

III.
Defendant maintains that in any event costs are not payable because the payment of costs was not authorized by the legislature in its bill granting the right to initiate action against the state. The right granted to initiate the action against the state provides that the right is granted "for the purpose of determining the liability for any injury or loss alleged to have been suffered, and to recover damages therefor." Section 2 of Colo.Sess. Laws 1967, Ch. 149, p. 189, provides:
"In any such action, the state, its departments, commissions, officers, or other employees shall have all the rights to which an ordinary defendant would be entitled in a similar action. Hearing shall be conducted according to the Colorado rules of civil procedure, and the laws of this state, and liability, if any, and damages, if any, shall be determined and assessed in accordance with the same standards and rules of law applicable in similar actions between private parties."
We agree with the text in Annot., 72 A. L.R.2d 1379, at 1393, wherein it is stated:
"Where a state voluntarily becomes a litiganteither in its own courts or in the courts of another jurisdictionthe result, according to some cases, is that it waives its sovereign immunity from suit and may be subjected to costs in the same manner as a private litigant.. . ."
Judgment affirmed.
ENOCH and PIERCE, JJ., concur.