## No. 27746

**John C. Peterson v. Ground Water Commission of the State of Colorado; C. J. Kuiper, Colorado State Engineer and Executive Director of the Ground Water Commission of the State of Colorado**

(579 P.2d 629)

Decided June 5, 1978. Rehearing denied June 19, 1978.

510

Francis A. Benedetti, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Gregory J. Hobbs, Jr., First Assistant, Natural Resources Section, Loren L. Swick, Special Assistant, Natural Resources Section, John C. Ohrenschall, Assistant, Natural Resources Section, for defendants-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

On November 25, 1975, John C. Peterson (plaintiff) filed an application with the Colorado Ground Water Commission (commission) seeking a permit to construct a well and to appropriate designated ground water from the Northern High Plains Designated Ground Water Basin in Yuma County. The commission considered the application under its three-mile test to determine whether unappropriated water was available. The application was denied on the grounds that the plaintiff's three-mile circle was over-appropriated and that the proposed well would unreasonably impair existing water rights. The district court sustained the commission's denial after a trial *de novo* held pursuant to statute. Section 37-90-115, C.R.S. 1973. We affirm.

On appeal, three questions must be addressed: First, did the trial court err in refusing to enter a default judgment against irrigators who were personally served but failed to appear? Secondly, may the commission assume, for the purpose of evaluating applications, that the full amount of water claimed under conditional permits has been validly appropriated? And, finally, was the trial court's judgment supported by sufficient evidence?

## I.

The plaintiff personally served notice of his appeal upon all irrigators within his three-mile circle. Only a few of the irrigators responded with an answer or appeared at trial. The plaintiff sought a default judgment against the non-appearing irrigators on the theory that the irrigators were the real parties in interest. The trial court denied the plaintiff's motion.

Section 37-90-115(2), C.R.S. 1973, requires that an applicant who perfects an appeal in the district court serve notice of his appeal on "all parties interested." Nowhere in the Colorado Ground Water Management Act (Act), section 37-90-101 *et seq.,* C.R.S. 1973 (1977 Supp.), however, is a definition of "all parties interested" to be found. We must, therefore, construe the phrase to reasonably effect the legislative intent that "all parties interested" receive notice.

The rights of existing appropriators are clearly implicated in any decision to issue a conditional permit to appropriate designated ground water. The Act, therefore, requires that an applicant cause his application to be published and permits prior appropriators to file objections to the proposed appropriation. Section 37-90-107(2), (3), C.R.S. 1973. Personal notice, however, is not required. Prior appropriators are required to review the published applications and determine whether to file

objections. Since it would be inconsistent to require personal service on all irrigators at the appellate stage of a proceeding when not required at the initial stage, we conclude that "all parties interested" on appeal refers only to those persons who have previously filed objections to the application.

 Notwithstanding the statutory requirement that "all parties interested" be served if an appeal is taken, a default judgment cannot be entered in favor of the applicant if the irrigators fail to answer. Prior appropriators are entitled to protection against unreasonable impairment of their rights under the Act, regardless of their decision to make an objection or not. If no objections are filed, the applicant cannot receive a permit on the theory that existing appropriators have concluded that their rights would not be injured by the proposed appropriation. Irrigators are entitled to rely upon the commission's fulfillment of its duty to determine, even in the absence of an objection, whether the proposed well will unreasonably impair existing rights. Section 37-90-107(3), C.R.S. 1973. Similarly, in an appeal to the district court, the irrigators can rely upon the commission to protect their existing rights.

## II.

 Section 37-90-107(5), C.R.S. 1973, provides that the commission must consider the "quantity of existing claims" in determining whether a proposed appropriation will unreasonably impair existing rights. The commission has implemented this statutory provision by evaluating well applications "with the assumption that, for the purpose of this analysis, all rights to appropriate are being fully exercised." The plaintiff does not challenge the commission's duty to protect existing rights, but contends that the commission's assumption has had the effect of overstating the extent of existing appropriations.

We accepted the plaintiff's argument in *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978), and held that water claimed under conditional permits cannot be considered as "existing claims" to the detriment of new applications if not perfected by beneficial use or unless the conditional permit is being perfected in the statutory process. The commission's contention that the priority lists prepared pursuant to section 37-90-109, C.R.S. 1973, were equivalent to the final permits required to be issued under section 37-90-108, C.R.S. 1973 (1977 Supp.), was rejected on the ground that no investigation of the claimed beneficial use had been made. In *Thompson,* we reviewed the provisions of the Colorado Ground Water Management Act and indicated that the commission would be required to comply with the statute.

 Our decision in *Thompson,* however, was "not intended to affect valid water rights which are presently represented by conditional permits." In that case, we declared:

"The 'quantity of existing claims' which must be considered by the commission is the sum of all water rights which have been appropriated and

those water rights which are in the process of being appropriated under conditional permits. The legislative intent evidenced in the Colorado Ground Water Management Act is that the issuance of final permits, which requires proof and verification of the extent of beneficial use, would serve a function equivalent to the final surface decree and establish senior rights. But to compute the 'quantity of existing claims' only on the basis of rights represented by final permits would ignore the right that holders of conditional permits have to perfect their appropriations to the full extent of their conditional permits. These rights in the process of being appropriated, therefore, must be considered by the commission in their calculation of the 'quantity of existing claims.'"

 A conditional permit does not entitle its holder to apply only a portion of the water available under the permit to beneficial use and retain the ability to later expand his use to the full extent originally allowed. The Act requires that the holder of a conditional permit place the water to beneficial use within a time period certain. Section 37-90-108(3), (4), C.R.S. 1973 (1977 Supp.). Conditional permits expire and are of no effect one year after their issuance unless one of three events occur: First, if the statutory requirements necessary for the issuance of a final permit have been satisfied, the appropriator is entitled to a final permit to the extent of his beneficial use. Secondly, a conditional permit will not expire if the commission has extended the permit for a time certain for good cause shown. And, finally, if the appropriator has submitted well completion data, but has failed to submit proof of beneficial use, the appropriator is entitled to notice and twenty days to provide the missing information. Prior to the expiration of the conditional permit, the appropriator is able to perfect a right to the full extent permitted under his conditional permit and can be referred to as being "in the process" of perfecting his appropriation.

 The legislature intended that an appropriator within the context of designated ground water would submit proof of well completion and of beneficial use and receive a final permit to the extent of his beneficial use within one year. Section 37-90-108, C.R.S. 1973 (1977 Supp.). An appropriator who constructs a well, but fails to apply the water to a beneficial use, does not acquire a valid water right. Holders of conditional permits may not claim the maximum amount permitted under their permits and yet place only a portion of the claimed water to beneficial use. It is in this context that we declared in *Thompson* that "valid water rights which are presently represented by conditional permits" would not be adversely affected. Water claimed under conditional permits which have expired is validly appropriated only to the extent of actual beneficial use prior to the expiration of the conditional permit, regardless of the fact that a final permit based upon the extent of beneficial use has not been issued. If the legislature had intended that the holder of a conditional permit

could retain the ability to use the full amount originally available for appropriation, regardless of beneficial use within the statutory period, it would not have required the issuance of final permits at the end of the period based upon beneficial use.

Only "valid rights which are presently represented by conditional permits" and claims in the process of being appropriated may be considered in determining the "quantity of existing claims." The commission's policy of considering conditional permits as if they were valid rights, regardless of beneficial use, may overstate the extent of existing appropriations and result in the denial of an application which should be granted and is, therefore, disapproved. *Thompson v. Colorado Ground Water Commission, supra.*

### III.

The commission determines whether to issue a conditional permit by comparing the amount of water available for appropriation within an applicant's circle with the level of existing appropriation. If the proposed well will cause the total amount of water within the circle to be depleted more than forty percent within twenty-five years, the permit is denied. Unfortunately, the evaluation process is not as simple as might be supposed. Expert testimony introduced at trial by both the plaintiff and the commission establishes that the inquiry is quite complex and involves numerous factors. The legislature recognized the difficult factual questions involved in the designated ground water context and, therefore, required the commission to consider:

"[T]he area and geologic conditions, the average annual yield and recharge rate of the appropriate water supply, the priority and quantity of existing claims of all persons to use the water, the proposed method of use, and all other matters appropriate to such questions." Section 37-90-107(5), C.R.S. 1973.

The evidence in this case consisted primarily of testimony concerning well hydrographs. A well hydrograph reflects the actual change in water level of an observation well as determined from data compiled by the United States Geological Survey. The well data for several years is charted to produce a graph commonly referred to as a hydrograph. All expert witnesses agreed at the trial that hydrographs provide the best indication of what is actually occurring in a particular area of the aquifer.

The plaintiff introduced into evidence eight hydrographs of wells within a four-mile circle of the plaintiff's proposed well. Four of the eight wells were within the plaintiff's three-mile circle. A composite hydrograph of the eight wells, which approximated the hydrograph of the observation well nearest the plaintiff's proposed well, reflected the approximate decline in water level in the area of the proposed well from 1968 to 1977.

The first factor determined by the commission in applying the three-mile test is the average saturated thickness of the three-mile circle. The

commission used the 1968 thickness of 129 feet in evaluating the plaintiff's application. Evidence at trial, however, indicated that the water level had declined nine feet by 1975 and was reduced to a thickness of 120 feet. Based upon a 120-foot saturated thickness, the plaintiff's expert witness drew a straight lines on a graph which reflected exactly forty percent depletion within the subsequent twenty-five-year period. The expert then extrapolated several straight line from the composite hydrograph which represented his predictions of the future decline based upon past experience. The extrapolated lines were above the twenty-five-year/forty percent depletion line and caused the expert to conclude that the water level was declining at such a rate that the plaintiff's proposed well would not result in more that the permitted depletion.

The commission's experts disagreed with the conclusion of the plaintiff's expert concerning the predictions based upon the composite hydrograph. They testified that the previous ten years' experience was not a true indication of the present or future rate of decline. It was their contention that the rate of decline would accelerate and cause the predictive hydrograph to slope downward to reflect an increase in the depletion rate with the passage of time. The projected hydrograph, therefore, would not be a straight line, but would be a curved line which would intersect the forty percent depletion line within the relevant twenty-five year-period.

Several reasons were given by the commission's experts to justify their assertion that the rate of decline in the water level would accelerate. First, the number of wells has increased since 1968. As a result, the greater number of wells will cause a greater decline than experienced in earlier years. Secondly, the extent of use may increase depending upon the type of crop cultivated. Thirdly, less water is contained at increased depths of the aquifer because of greater cementation. And, finally, changes in precipitation patterns may result in a decreased rate of recharge.

The plaintiff's expert expressed a contrary opinion concerning the future rate of decline. His testimony was that the decrease in the water level would not accelerate because the better, coarser materials are contained in the lower portions of the aquifer, and the actual quantity of water used would decrease as more irrigators shift from flood irrigation to sprinkler systems.

The commission introduced a series of twenty-eight hydrographs of wells located in Kit Carson County which reflected twelve years of experience with the Ogallala formation. The hydrographs indicated that the rate of depletion had accelerated substantially between 1973 and 1976. While the hydrograph evidence was not conclusive as to future experience to be expected in Kit Carson County, not to mention the plaintiff's circle in Yuma County, the evidence was properly admitted and was relevent. Since the Ogallala formation is an inter-connected, water-bearing formation, evidence of water conditions beyond the applicant'sthree-mile

circle may be considered. *Thompson v. Colorado Ground Water Commission, supra.*

The trial court, as the trier of fact, found that unappropriated water did not exist and that the applicant's proposed appropriation would unreasonably impair existing rights in the plaintiff's circle. In *Adler v. Adler,* 167 Colo. 145, 445 P.2d 906 (1968), we reviewed the standard of appellate review of a trial court's findings and said:

"We have repeatedly held that in such circumstances the finding of the trial court, if supported by the evidence, will not be disturbed by this Court even though we might have reached a different conclusion had we been the trier of the facts. Moreover, it is also our duty in such cases to search the record for evidence most favorable to the judgment of the trial court."

The sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn therefrom, will not be disturbed unless so clearly erroneous as to find no support in the record. *Dominion Insurance Company Limited v. Hart,* 178 Colo. 451, 498 P.2d 1138 (1972).

Viewing the evidence in the light most favorable to the trial court's judgment, we find that sufficient evidence exists in the record to support the trial court's conclusion that unappropriated water does not exist. Although the commission and the trial court erred in considering conditional permits as though they represented valid rights, regardless of beneficial use, the trial court's findings of fact reflect that the court was satisfied that, at present rates of use, forty percent of the designated ground water within the plaintiff's circle would be depleted within twenty-five years. Therefore, the error which occurred did not constitute reversible error.

Accordingly, the judgment is affirmed.

MR. JUSTICE GROVES specially concurring.

MR. JUSTICE GROVES specially concurring:

I concur completely in this opinion except for the reservation that I made when I concurred in the result of *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978).