CENTRAL COLORADO WATER CONSERVANCY DISTRICT and Ground Water Management Subdistrict of the Central Colorado Water Conservancy District, Plaintiffs–Appellants and Cross–Appellees,

Jackson Lake Reservoir and Irrigation Company, Fort Morgan Reservoir and Irrigation Company and Lower South Platte Water Conservancy District, Plaintiffs-in-Intervention-Appellants and Cross–Appellees,

v.

Harold D. SIMPSON, State Engineer, State of Colorado and Alan Berryman, Division Engineer, Water Division No. 1, State of Colorado, Defendants–Appellees and Cross–Appellees,

and

Colorado Rock Products Association, a Colorado non-profit corporation, Defendant-in-Intervention-Appellee and Cross–Appellant.

No. 92SA499.

Supreme Court of Colorado,
En Banc.

July 11, 1994.

**338**

Lind, Lawrence & Ottenhoff, Kim R. Lawrence, Greeley, for plaintiffs-appellants and cross-appellees.

Timothy R. Buchanan, P.C., Timothy R. Buchanan, Boulder, for plaintiffs-in-intervention-appellants and cross-appellees.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Linda L. Preslan, Asst. Atty. Gen., Denver, for defendants-appellees and cross-appellees.

Vranesh & Raisch, Michael D. Shimmin, Douglas A. Goulding, Boulder, for defendant-in-intervention-appellee and cross-appellant.

Justice KIRSHBAUM delivered the Opinion of the Court.

In November 1989 appellants, the Central Colorado Water Conservancy District and the Ground Water Management Subdistrict of the Central Colorado Water Conservancy District (hereafter collectively referred to as "the Central Colorado District"), filed this case in the District Court for Water Division No. 1 seeking a declaration that Senate Bill 120, chapter 314, 1989 Colorado Session Laws 1422 (hereafter "S.B. 120"), which statute requires certain sand and gravel pit owners and operators who expose tributary ground water to evaporation in the course of their mining operations to file augmentation plans with appellee Colorado State Engineer (hereafter "the State Engineer"), violates certain provisions of the United States and Colorado Constitutions.[1] Appellants, the Jackson Lake Reservoir and Irrigation Company (hereafter "the Jackson Lake Company"), the Fort Morgan Reservoir and Irrigation Company (hereafter "the Fort Morgan Company"), and the Lower South Platte Water Conservancy District (hereafter "the Lower South Platte District"), intervened in the action.

The water court held that the legislation did not violate the applicable constitutional provisions, and the appellants appeal that judgment. We affirm in part and reverse in part.

**I**

As a result of open-pit sand and gravel mining operations, ground water contained in shallow aquifers is often exposed to the atmosphere by excavation below the water table.[2] Prior to the enactment of the Water

---

1. S.B. 120 contained various amendments to §§ 37–90–137, 37–90–107, 37–80–120, 37–92–305, 37–92–502, 15 C.R.S. (1973 & 1988 Supp.), and § 34–32–116, 14 C.R.S. (1984 & 1988 Supp.), all of which pertain to regulation of evaporative losses from sand and gravel pits. The parties refer to these legislative provisions collec-

tively as S.B. 120. For purposes of clarity, this opinion similarly refers to the legislation as a whole as "S.B. 120."

2. Although operators of sand and gravel pits that are excavated below the water table often pump the pits dry during mining, once the pit is mined

Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, 15 C.R.S. (1990 & 1993 Supp.) (hereafter "the 1969 Act"), the State Engineer did not regulate the evaporation of exposed ground water from such sand and gravel pits. For several years after the adoption of the 1969 Act, the State Engineer adopted policies with respect to augmentation requirements for evaporative depletions from sand and gravel pits that ranged from disavowal of authority to prevent such losses to requiring court-approved augmentation plans. By 1980, however, the State Engineer had begun treating the evaporation of water from reclaimed sand and gravel pits as a beneficial use and administering such pits as "wells" that required permits and augmentation plans pursuant to section 37–90–137, 15 C.R.S. (1973 & 1979 Supp.).[3]

In *Three Bells Ranch Associates v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164 (Colo.1988), and *Zigan Sand & Gravel, Inc. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 175 (Colo.1988), this court considered several issues regarding the duties of owners and operators of sand and gravel pits with respect to evaporative losses of ground water from sand and gravel mining operations. We concluded that sand and gravel pits exposing tributary ground water to evaporation constitute "wells" subject to regulation pursuant to the Colorado Ground Water Management Act, §§ 37–90–101 to –142, 15 C.R.S. (1990 & 1993 Supp.) (hereafter "the Ground Water Management Act"), and the 1969 Act, and that the formation of lakes and ponds through the process of sand and gravel mining and reclamation constitutes an appropriation of water. *Three Bells*, 758 P.2d at 169–75; *Zigan*, 758 P.2d at 181–85. We also concluded that sand and gravel mining permits issued pursuant to the Colorado Mined Land Reclamation Act, §§ 34–32–101 to – 127, 14 C.R.S. (1984 & 1993 Supp.) (hereafter "the Mined Land Reclamation Act"), must include a requirement that ground water exposed as a result of the operation of such sand and gravel pits and lost through evaporation be augmented. *Three Bells*, 758 P.2d at 171–72; *Zigan*, 758 P.2d at 184–86.

During the legislative session immediately following our decisions in *Three Bells* and *Zigan*, the General Assembly adopted S.B. 120, which bill contained amendments to the Ground Water Management Act, the 1969 Act, and the Mined Land Reclamation Act. S.B. 120 contains provisions exempting owners and operators of sand and gravel pits excavated prior to January 1, 1981, and for which augmentation plans requiring replacement of evaporative losses have not been established by court decree, and owners and operators of sand and gravel pits for which augmentation agreements were entered into with conservation districts or water users associations prior to January 15, 1989, from requirements respecting augmentation for evaporative losses generally applicable to applicants for well permits. S.B. 120 also contains a provision requiring persons who have reactivated or who reactivate sand and gravel mining operations that ceased activity prior to January 1, 1981, to obtain well permits and augmentation plans in the same manner as other well permit applicants, except that owners or operators of such reactivated pits will not be required to provide increased replacement of water if, prior to January 15, 1989, they entered into and continually complied with written augmentation or replacement agreements with water conservancy districts or water users associations. Finally, S.B. 120 authorizes owners and operators of sand and gravel pits to consider evaporative losses attributable to vegetation historically growing on the surface area of land excavated for sand and gravel mining operations when calculating the requisite amount of augmentation water to replace evaporative losses from such pits.

On November 9, 1989, the Central Colorado District filed this action against appellees the State Engineer and the Division Engineer for Water Division No. 1. The complaint challenged the constitutionality of the provisions of S.B. 120 exempting certain categories of sand and gravel pits from the prior

---

and the pumping ceases, all such pits accumulate and expose ground water.

**3.** Section 37–90–137 requires permits for construction of wells outside of a designated ground water basin.

appropriation system of water rights codified in the Ground Water Management Act and the 1969 Act. The complaint alleged, *inter alia*, that various provisions of S.B. 120 violated the Equal Protection Clauses of the United States and Colorado Constitutions; violated the provisions of article XVI, sections 5 and 6, of the Colorado Constitution establishing this state's appropriation system; effected a taking of property without just compensation in violation of article II, section 15, of the Colorado Constitution; and, by authorizing ground water diversions from some sand and gravel pits without adequate augmentation, injured the Central Colorado District's water rights in the South Platte River basin. The complaint sought relief in the form of a decree containing the following requirement:

> [T]he curtailment of all diversions by gravel pits which exposed ground water and continue to expose ground water, regardless of the date of the original exposure, unless the out-of-priority depletions caused by said diversions are replaced in time, quantity and location so as to prevent interference with or any injury to the vested water rights and decreed constitutional water rights of Plaintiffs and their constituents as determined by a decree for a plan of augmentation entered by the Water Court.

Appellee, the Colorado Rock Products Association, an industry group representing sand and gravel pit operators, intervened as a defendant-in-intervention in the case.

In January 1992, the water court conducted a four-day bench trial. Numerous witnesses testified and several hundred exhibits were introduced. At the conclusion of the trial, the water court determined that S.B. 120 did not violate the provisions of the United States and Colorado Constitutions relied upon by the appellants and that the State Engineer may consider, in determining the requisite augmentation, the eradication of pre-existing vegetation which results from the excavation of a sand and gravel pit. The court awarded certain costs to the appellees and to the appellants and denied a request by the Colorado Rock Products Association for an award of costs in excess of $40,000 for expenses associated with its employment of expert witnesses. The appellants have appealed the water court's judgment, including its award of costs to the appellees. The Colorado Rock Products Association has cross-appealed the denial of its request for costs associated with its employment of expert witnesses.

II

The appellants argue that S.B. 120 violates guarantees of equal protection of the law established by the Fourteenth Amendment to the United States Constitution and article II, section 25, of the Colorado Constitution by treating similarly situated persons differently. Specifically, they contend that sand and gravel pit owners and operators who excavated such pits after 1980 and other non-exempted water users are denied equal protection of the law because S.B. 120 requires them to obtain well permits and augmentation plans pursuant to the priority system established by the General Assembly while exempting owners and operators of sand and gravel pits excavated prior to January 1, 1981, or for which private augmentation agreements were negotiated prior to January 15, 1989, from such requirements. The appellants also argue that S.B. 120 violates their rights to due process of law by in effect subordinating their vested rights as water users to the rights of owners and operators of sand and gravel pits excavated prior to January 1, 1981, or for which private augmentation plans were negotiated prior to January 15, 1989, without affording the appellants adequate notice or opportunity to protect their rights by contesting proposed augmentation agreements pursuant to section 37–92–302, 15 C.R.S. (1990 & 1993 Supp.).[4] We reject these arguments.

A

■ Although the Colorado Constitution does not contain a direct corollary to the

---

4. The record suggests that the appellants represent water users whose rights are both senior and junior to rights owned by owners and operators of sand and gravel pits excavated prior to January 1, 1981, or for which private augmentation plans were negotiated prior to January 15, 1989.

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the right to equal protection of the law is guaranteed to Colorado citizens by means of the due process clause of article II, section 25, of the Colorado Constitution. *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 906 n. 7 (Colo.1993); *People v. Wilhelm*, 676 P.2d 702, 704 & n. 4 (Colo.1984); *Heninger v. Charnes*, 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980). We have recognized that the standards of strict scrutiny, intermediate scrutiny and rational basis, developed by the United States Supreme Court for analysis of equal protection issues arising under the federal constitution, are generally applicable to analysis of equal protection issues arising under the Colorado Constitution. *Scholz*, 851 P.2d at 906 n. 7. *See also Harris v. The Ark*, 810 P.2d 226, 229–30 (Colo.1991).

Statutes enacted by the General Assembly are presumed constitutional and a party asserting that a particular statute violates constitutional provisions assumes the burden of establishing such assertion beyond a reasonable doubt. *Dempsey v. Romer*, 825 P.2d 44, 51 (Colo.1992); *Anderson v. Colorado State Dep't of Personnel*, 756 P.2d 969, 975 (Colo.1988). Moreover, because S.B. 120 does not infringe on a fundamental right or create a classification based on race, religion, national origin or gender, the equal protection claims asserted by the appellants must be resolved by application of the rational basis standard. *See Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527, 532 (Colo.1991). Pursuant to this standard, S.B. 120 does not contravene equal protection guarantees if it bears a rational relationship to a legitimate state objective. *Scholz*, 851 P.2d at 906.

The water court concluded that S.B. 120 was designed to address issues concerning the administration of this state's appropriation system resulting from our holdings in *Three Bells Ranch Associates v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164 (Colo.1988), and *Zigan Sand & Gravel, Inc. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 175 (Colo.1988). We agree with that conclusion.

The preamble to S.B. 120 states that the proposed legislation concerns "THE RE-QUIREMENT FOR THE AUGMENTATION OF WATER IN CONNECTION WITH THE EXTRACTION OF SAND AND GRAVEL BY OPEN MINING...." The legislative declaration expressly refers to water rights appropriations and to interstate compacts and court decrees respecting water. The substantive provisions of the bill deal with procedures for conducting sand and gravel mining operations. The General Assembly has the authority and the responsibility to establish policies and procedures affecting this state's natural resources.

In addition, legislative history supports the water court's conclusion that S.B. 120 was adopted to address issues of administration of the appropriation system created by our decisions in *Three Bells* and *Zigan*. The record includes a transcript of a hearing held on March 14, 1989, by the House Committee on Agriculture, Natural Resources and Energy to consider S.B. 120. At this hearing the sponsor of the measure testified that a primary purpose of the bill was to provide funding to enable the State Engineer to administer sand and gravel pits in accordance with the holdings of *Three Bells* and *Zigan*. While noting that it had not been his original intent to create exemptions in the bill for particular sand and gravel pits, the sponsor indicated that the difficulty of ascertaining the ownership of many such pits and the lack of incentive for owners or former owners of such pits to pay the costs of augmentation when the pits no longer produce income justify the system contained in S.B. 120.

Two attorneys also testified at the committee hearing. The first attorney appeared on behalf of the Water Users Association of District 6. That district represented over forty-five senior holders of water rights on Boulder Creek and had negotiated numerous augmentation agreements directly with Boulder County sand and gravel pit owners. While stating that his client would prefer that S.B. 120 contain no exemptions for sand and gravel pits excavated prior to 1981, this attorney explained that such provisions were necessary to obtain passage of legislation that would implement the *Zigan* decision. The second attorney appeared on behalf of the Cache La Poudre Water Users Associa-

tion, which association represented the major water users in the Cache La Poudre River Basin. This attorney, who had represented the association in *Three Bells* and participated in *Zigan*, expressed similar support for S.B. 120.

Jeris Danielson, the then State Engineer, also testified at the hearing. He stated that as of March 1989 the Mined Land Reclamation Board had issued permits for sand and gravel mining operations statewide that, when developed, would result in approximately 78,000 acre-feet of ground water depletion through evaporation. He estimated that evaporative losses from sand and gravel pits subject to the exemptions established by S.B. 120 would account for about 18,700 acre-feet of this figure. While acknowledging that such exemptions would effectively "writ[e] off" this latter amount, Danielson nevertheless endorsed the proposed measure as a necessary compromise. Danielson presented similar testimony to the Senate Committee on Agriculture, Natural Resources and Energy on January 19, 1989, which testimony also referred to our decisions in *Three Bells* and *Zigan*.

In light of the language of S.B. 120 and the legislative history of its adoption, we conclude that the classifications, exemptions, and credits established thereby, which attempt to accommodate various interests affected by our decisions in *Three Bells* and *Zigan*, represent a rational effort by the General Assembly to achieve the legitimate governmental purpose of developing a program of administration of sand and gravel pits consistent with the holdings in those cases. We therefore conclude that S.B. 120 does not violate any rights to equal protection of the law protected by the United States and Colorado Constitutions.

B

The appellants argue that S.B. 120 violates their rights to due process of law by taking away the "essential attributes of a water right" and by failing to provide "any notice or opportunity for vested water rights owners to protect their rights." They contend that because S.B. 120 does not require the kind of resume notice to which changes in

water rights are normally subject pursuant to section 37–92–302(3)(a), 15 C.R.S. (1990), they are denied any opportunity to challenge what they contend is in effect a reallocation of portions of their water rights to certain owners and operators of sand and gravel pits or to contest the sufficiency of certain private augmentation plans established prior to January 15, 1989. They assert that S.B. 120 "creates a class of diversions senior to all other water rights, legalizes their diversions outside the priority system, and places them first in line in the priority system, damaging and diminishing the priorities of others." We reject these arguments.

■ In *Rosane v. Senger*, 112 Colo. 363, 370, 149 P.2d 372, 375 (1944), this court noted that "[a] legal right to damage for an injury is property and one can not be deprived of ... property without due process." Constitutional guarantees of due process, however, are applicable only to "rights, not remedies." *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 907 (Colo.1993) (citing *Gibbes v. Zimmerman*, 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed. 342 (1933)).

■ The procedures created by S.B. 120 for establishing the amount of ground water a sand and gravel pit owner or operator may allow to evaporate from a particular pit and the amount of augmentation water that person must provide under an augmentation plan concededly differ from the procedures generally applicable to requests for changes to water rights and adjudication of augmentation plans. The fact that S.B. 120 does not provide for resume notice as contemplated by section 37–92–302(3)(a), however, does not deprive the appellants and other water users of the ability to protect their water rights. As we recognized in *Three Bells* and *Zigan*, the nature of a water right accorded to a sand and gravel pit owner or operator under S.B. 120 is the same as that granted to any other permitted well owner, *i.e.*, the right to appropriate water subject to the constraints of the prior appropriation system set forth in the Colorado Constitution and applicable statutes. Under this system, senior appropriators may seek legal redress for any injury caused to their water rights by holders of

junior water rights. *E.g., Three Bells*, 758 P.2d at 170. In addition, holders of junior water rights may also protect their interests by challenging requests for changes in water rights that may injure such interests. *Orr v. Arapahoe Water & Sanitation Dist.*, 753 P.2d 1217, 1223 (Colo.1988); *City of Westminster v. Church*, 167 Colo. 1, 11–12, 445 P.2d 52, 58–59 (1968). S.B. 120 does not alter the nature of these rights and does not bestow any higher priority on rights granted to particular owners and operators of sand and gravel pits under its provisions than such persons could otherwise obtain.[5] Thus, any holder of a water right who may suffer injury by the exercise of a junior right held by the owner or operator of a sand and gravel pit, or any holder of a water right who may suffer injury by a proposed change in the use of a senior water right owned by a sand and gravel pit owner or operator, may seek protection from such injury in the appropriate water court. *See generally Fellhauer v. People*, 167 Colo. 320, 447 P.2d 986 (1968). S.B. 120, therefore, does not deny appellants their right to due process of law.

### III

The appellants assert that S.B. 120 constitutes special legislation, in violation of article V, section 25, of the Colorado Constitution. We reject this argument.

■ The Colorado Constitution prohibits the General Assembly from passing "local or special laws" in any of several "enumerated cases" or enacting a special law "where a general law can be made applicable...." Colo. Const. art. V, § 25. As we noted in *In re Interrogatory Propounded by Governor*, 814 P.2d 875, 885 (Colo.1991), "[t]he question posed by [this section] is whether the legislation creates true classes and, if so, whether the classifications are reasonable and rationally related to a legitimate public purpose." Unless the legislation involves an enumerated prohibition, "the question of whether a general law could be made applicable is with-

in the discretion of the General Assembly, and will not be disturbed absent an abuse of discretion." *Id.* An abuse of this legislative discretion will be found only if it is established that the General Assembly "acted arbitrarily or capriciously in its decision that a special law is required." *Id.* at 886.

■ S.B. 120 concededly creates two classes of sand and gravel pit owners and operators. One class consists of owners and operators of pits excavated prior to January 1, 1981; owners and operators of pits respecting which private augmentation agreements with water conservancy districts or water users associations were entered into prior to January 15, 1989; and owners and operators of pits that were the subject of augmentation plans judicially approved prior to July 1, 1989. The second class consists of owners and operators of pits excavated or reactivated on or after January 1, 1981, who had neither entered into private augmentation agreements with water conservancy districts or water users associations prior to January 15, 1989, nor obtained judicially approved augmentation plans prior to July 1, 1989. Sand and gravel pit owners and operators in the first group are not subject to requirements to augment evaporative depletions of ground water resulting from their operations in the same manner as are other well owners. Persons in the latter group are subject to such augmentation requirements.

We have concluded that S.B. 120 reflects the General Assembly's response to the state's legitimate interest in adopting policies for regulating sand and gravel pit operations. The challenged classifications reflect the General Assembly's efforts to address practical problems of regulating sand and gravel pits excavated at various times and subject to various augmentation requirements. The decision to validate augmentation plans for sand and gravel pits established by contract prior to January 15, 1989, or by court decree prior to July 1, 1989, provides a measure of certainty and stability for all water users and

---

5. The amendment in S.B. 120 to § 37–92–502(2)(b), 15 C.R.S. (1973 & 1988 Supp.), which prohibits a Division Engineer from ordering the curtailment of evaporation of groundwater from any sand and gravel pit excavated prior to Janu-

ary 1, 1981, does not preclude an owner of water rights senior to rights owned by an owner or operator of such pit from obtaining a court order directing the Division Engineer to curtail depletion of groundwater from the pit.

substantially reduces the likelihood of large-scale litigation concerning the validity and effect of such plans. Such determination represents a reasonable accommodation of many competing interests. Similarly, the General Assembly's conclusion that owners and operators of sand and gravel pits excavated years ago require special consideration is not unreasonable in view of the economic and administrative problems posed by any effort to regulate such pits. While the selection of the dates is somewhat arbitrary, S.B. 120 ensures that a majority of the sand and gravel pits contributing to the evaporative loss of ground water throughout Colorado will be subject to regulation. In our view, the classes established by the General Assembly are reasonable, are rationally related to a legitimate governmental interest, and reflect appropriate accommodations of various interests in the administration of the state's appropriation system. We therefore conclude that S.B. 120 does not contravene the provisions of article V, section 25, of the Colorado Constitution prohibiting special legislation.

## IV

The appellants contend that S.B. 120 impermissibly creates a new class of water rights not subject to the appropriation system established by article XVI, sections 5 and 6, of the Colorado Constitution; contravenes constitutionally based requirements of replacement of depletions that injure others; and impermissibly establishes a new class of water rights by allowing credit for the elimination of water-consuming trees and plants in determining augmentation requirements. We reject these arguments.

## A

Article XVI, section 5, provides in pertinent part as follows:

> The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

Colo. Const. art. XVI, § 5.

Article XVI, section 6, provides in pertinent part as follows:

> The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes.

Colo. Const. art. XVI, § 6. We have repeatedly recognized that these constitutional provisions establish a system of appropriative water rights that grants senior appropriators protection against injury from junior appropriators. *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164, 167–68 (Colo.1988); *Weibert v. Rothe Bros.*, 200 Colo. 310, 316, 618 P.2d 1367, 1371 (1980); *Fellhauer v. People*, 167 Colo. 320, 335–36, 447 P.2d 986, 994 (1968).

The rights established by these constitutional provisions have not been deemed absolute, however. Such a view would create impossible obstacles to any effective administrative policies designed to effectuate the constitutional scheme. Thus we have recognized that the General Assembly may impose reasonable regulations on the manner and method of appropriation. *See, e.g., Fox v. Division Eng'r for Water Div. 5*, 810 P.2d 644, 646 (Colo.1991). *See also Kuiper v. Warren*, 195 Colo. 541, 546, 580 P.2d 32, 35–36, *cert. denied*, 439 U.S. 984, 99 S.Ct. 575, 58 L.Ed.2d 656 (1978).

■ The legislative declaration set forth in section 1 of S.B. 120 provides as follows:

> It is the intent of the general assembly that nothing in this act shall in any way jeopardize the ability of the state of Colorado to meet its full obligation under any interstate compact or court decree or di-

minish the quantities of water rightfully belonging to any downstream appropriator within the state of Colorado or any downstream state.

As this declaration indicates, the provisions of S.B. 120 do not create a class of water rights immune from regulation. Section 6 of S.B. 120 prohibits a Division Engineer from ordering curtailment of diversions attributable solely to evaporation from exposed ground water in sand and gravel pits excavated prior to 1981. This section may well prohibit a Division Engineer from taking direct administrative action to require owners or operators of such sand and gravel pits to reduce evaporative losses, as the appellants contend. It does not, however, prohibit the owner of a water right senior to the water right of an owner or operator of a sand and gravel pit excavated prior to 1981 from establishing in an appropriate judicial forum that evaporative losses from that particular pit are causing injury to the owner of the senior right in an appropriate judicial forum and seeking a remedy therefor.[6] Similarly, owners and operators of sand and gravel pits excavated prior to 1981 seeking to transfer their rights may be challenged by holders of senior or junior water rights in the course of a change-in-use proceeding pursuant to section 37–92–302, 15 C.R.S. (1990 & 1993 Supp.). Owners and operators of sand and gravel pits excavated prior to 1981 are thus not insulated from judicial scrutiny of the effects of evaporative losses on senior water rights. While the provisions of S.B. 120 alter the manner in which senior and junior water right appropriators may obtain relief from injury, they do not create a new class of water rights not subject to the principles of appropriation established by article XVI, sections 5 and 6, of the Colorado Constitution.

### B

■ The provisions of section 2 of S.B. 120 authenticate the sufficiency of certain augmentation agreements negotiated with water conservancy districts or water users associations to replace ground water depleted through wet sand and gravel mining. While article XVI, sections 5 and 6, of the Colorado Constitution provide the basis for requiring augmentation of ground water depletions, the precise mechanism by which such augmentation plans are submitted, considered and approved have been established by the General Assembly. See §§ 37–92–302, –501.5, 15 C.R.S. (1990 & 1993 Supp.). By recognizing the validity of augmentation agreements negotiated prior to January 15, 1989, between sand and gravel pit owners and operators and conservancy districts or water users associations, the General Assembly has merely established an additional means by which approval of one class of augmentation plans could be obtained. We disagree that such legislative determination violates the provisions of article XVI, sections 5 and 6.

### C

■ Section 37–92–103(9) of the 1969 Act generally precludes water users from using tributary water salvaged by the eradication of certain water-consuming plants (phreatophytes) historically growing on the surface area of land excavated for sand and gravel mining operations as a component of an augmentation plan. Sections 4 and 5 of S.B. 120 authorize deductions of the amount of ground water that was historically depleted through vegetative transpiration from natural vegetative cover growing on the surface of the excavated area of a sand and gravel pit in determining the quantity of water that must be provided in an augmentation plan. The

6. Section 2 of S.B. 120 added a new subsection (11)(a)(II)(d) to § 37–90–137, 15 C.R.S. (1973 & 1988 Supp.), which contains the following language:

    (d) No person who obtains or operates a plan for augmentation or plan of substitute supply prior to July 1, 1989, shall be required to make replacement for the depletions from evaporation exempted in this subsection (11) or otherwise replace water for increased calls which may result therefrom.

Although this section is not specifically challenged by the appellants, we note that its language could be construed to prohibit a court from ordering an owner or operator of a sand and gravel pit for which a valid augmentation agreement was obtained prior to July 1, 1989, to provide additional augmentation water in excess of the amount required by the agreements. This subsection does not appear to preclude remedies other than actual replacement of depletions.

appellants argue that S.B. 120 creates a new class of water rights based on the elimination of such vegetation and therefore conflicts with section 37–92–103(9), as well as with the provisions of article XVI, sections 5 and 6, of the Colorado Constitution. We disagree.

In *Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc.*, 187 Colo. 181, 190–91, 529 P.2d 1321, 1326–27 (1974), we held that the destruction of phreatophytes to prevent evaporation did not result in the creation of a water right independent of the priority system even though water otherwise lost to the stream would be available for beneficial use. We recognized, however, that the General Assembly had authority to create a system that would permit development of this kind of water. *Id.* at 192, 529 P.2d at 1327.

The credits established by S.B. 120 for calculating augmentation requirements limit the augmentation obligation of a sand and gravel pit owner or operator to replacement of that amount by which excavation of the pit *increased* the amount of tributary ground water lost through evaporation from the site at which the pit is located. Thus, rather than enabling such owners and operators to obtain rights to water outside the priority system, the provisions of S.B. 120 relating to credits for vegetative evaporation simply adjust required augmentation amounts to reflect the water actually lost to other users downstream. Without such a provision, sand and gravel pit owners and operators would be required to make available to downstream users an amount of water greater than that available prior to commencement of their mining operations.

In this light, the challenged provision creates no special rights, but merely precludes the imposition of augmentation requirements on certain sand and gravel pit owners and operators in excess of those placed on other water users. As we have previously held, the General Assembly has authority to create programs by which water that would otherwise be lost because of natural vegetative transpiration can be developed in an orderly fashion for beneficial use. *Shelton Farms*, 187 Colo. at 192, 529 P.2d at 1327. In view of the fact that the credits, when applied to

an otherwise adequate augmentation plan, will result in no diminution of the amount of water available for use in a stream, the legislation creating them does not contravene article XVI, sections 5 and 6, of the Colorado Constitution.

V

The appellants contend that S.B. 120 violates the "takings" clause of the Colorado Constitution, article II, section 15, which provides in pertinent part: "Private property shall not be taken or damaged, for public or private use, without just compensation." We disagree.

We have determined that a taking within the meaning of this constitutional provision occurs when a governmental entity "substantially deprives a property owner of the use and enjoyment of that property." *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo.), *cert. denied*, —— U.S. ——, 114 S.Ct. 63, 126 L.Ed.2d 33 (1993) (citing *Lucas v. South Carolina Coastal Council*, —— U.S. ——, ——, 112 S.Ct. 2886, 2895, 120 L.Ed.2d 798 (1992)). Although the language of article II, section 15, of the Colorado Constitution differs somewhat from the corresponding language of the Fifth Amendment to the United States Constitution, this court has considered decisions of the United States Supreme Court construing the federal takings clause as a guide in determining what constitutes a taking under the comparable provision of the Colorado Constitution. *See, e.g., Board of County Comm'rs v. Flickinger*, 687 P.2d 975, 983 (Colo.1984).

The United States Supreme Court has identified two categories of regulatory action which may be considered prima facie takings under the federal Constitution: (1) regulations that effect a physical invasion of the property, no matter how minute; and (2) regulations that effectively deny all economically beneficial use of land. *Lucas*, —— U.S. at ——, 112 S.Ct. at 2893. When a challenged regulation does not effect a physical invasion of property or render the property economically useless, the Court has adopted a factually based approach that encompasses such factors as the economic impact of the

regulation, its interference with reasonable investment-backed expectations, and the character of government action. *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494–95, 107 S.Ct. 1232, 1246–47, 94 L.Ed.2d 472 (1987). *See also Lucas,* —— U.S. at ——, 112 S.Ct. at 2893; *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 123–24, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). In applying these factors to determine whether a taking has occurred for purposes of federal takings analysis, the impact of the challenged action on the property as a whole must be considered. *Penn Central Transp. Co. v. New York City,* 438 U.S. at 130–31, 98 S.Ct. at 2662–63. The Court observed in *Keystone:*

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature of the interference with rights *in the parcel as a whole....*

*Keystone,* 480 U.S. at 497, 107 S.Ct. at 1248 (quoting *Penn Central* at 438 U.S. at 130–31, 98 S.Ct. at 2662–63) (emphasis added in *Keystone* ).

Our decision in *Grynberg,* wherein we concluded that the takings clause of article II, section 15, of the Colorado Constitution permits property owners whose property is substantially damaged by governmental action to obtain legal redress for such damage even though the action does not constitute a physical invasion of the property, established the principle that the takings clause of our constitution prohibits governmental conduct that might not be deemed a taking for purposes of the federal Constitution. *Id.,* 846 P.2d at 179 (citing *La Plata Elec. Ass'n, Inc. v. Cummins,* 728 P.2d 696, 698 (Colo.1986); *City of Pueblo v. Strait,* 20 Colo. 13, 18, 36 P. 789, 791 (1894)). Nevertheless, in determining whether governmental action results in substantial damage to property, we have employed a multi-factor balancing test similar to the analytical framework adopted by the United States Supreme Court to resolve fed-eral takings clause issues. *E.g., Flickinger,* 687 P.2d at 983.

In this case, the appellants admit that they are unable to prove that any particular water right owner has been injured as a result of the implementation of S.B. 120. The appellants also acknowledge that it is probably not scientifically possible to prove what injury, if any, the application of S.B. 120 to any particular sand and gravel pit has caused to the owner of any specific water right. Instead, the appellants argue that because the exemptions established by S.B. 120 may reduce the water available for use in the over-appropriated South Platte River basin, injury to individual junior water rights will inevitably result in dry years when there is insufficient water to satisfy the rights of all water users even in the absence of the bill.

Although the water court found that implementation of S.B. 120 will "somewhat ... decrease" the amount of water in the river available for use, this fact alone does not establish "substantial" damage to any particular water right owner. Owners of water rights have no title to the water in the river, whatever its volume might be at any particular time. *See Navajo Dev. Co., Inc. v. Sanderson,* 655 P.2d 1374, 1377 & n. 2 (Colo. 1982); *Monte Vista Canal Co. v. Centennial Irrig. Ditch Co.,* 22 Colo.App. 364, 368–69, 123 P. 831, 832–33 (1912); *Wheeler v. Northern Colo. Irrig. Co.,* 10 Colo. 582, 587–88, 17 P. 487, 489–90 (1888). While owners of senior water rights are entitled to protection from injurious depletions by owners of junior water rights, the appellants' effort to equate potential injuries with actual damages for purposes of takings analysis is not persuasive.

The exemptions established by . S.B. 120 may render certain junior water rights on the river somewhat more junior, with the result that some owners of water rights might experience reduced amounts of water during periods when water levels are very low. Such intermittent restrictions do not constitute a substantial diminution of the economic value of the affected rights, however. To determine whether any diminution in the economic value of water rights that might result from the implementation of S.B. 120 is

substantial, one must compare the value of water rights potentially affected by this legislation with the value of those rights before the adoption of the provisions of S.B. 120. Although the water court concluded that the total amount of water available to appropriators would be somewhat reduced by the implementation of S.B. 120, no evidence was introduced as to the relative economic values of any specific water rights before and after adoption of the challenged legislation. The appellants thus failed to establish that the adoption of S.B. 120 has caused or will result in a substantial diminution of the economic value of any water rights.

Furthermore, the water court found that any impact of S.B. 120 on the flows in the South Platte River would be minimal. The historical fluctuations in the water levels of the river ranged from a low of 329,927 acre-feet to a high of over 1,000,000 acre-feet measured at the Kersey gauge. Estimates of the amount of water lost through evaporation from sand and gravel pits exempted by the provisions of S.B. 120 ranged from 6,296 acre-feet to 9,825 acre-feet. In light of the variance in the South Platte's flows of approximately 700,000 acre-feet, the water court's finding that the loss of 6,296 acre-feet through evaporation was relatively minor is supported by the evidence and will not be disturbed on appeal. *See Peterson v. Ground Water Comm'n,* 195 Colo. 508, 516, 579 P.2d 629, 634 (1978); *Deas v. Cronin,* 190 Colo. 177, 179–80, 544 P.2d 991, 993 (1976). These findings further support the water court's conclusion that the appellants' usufructuary water rights have not been taken by the state in violation of article II, section 15, of the Colorado Constitution.

## VI

The appellants assert that the water court erred in refusing to take judicial notice of information submitted by appellants after the conclusion of the evidentiary portion of the hearing concerning water-levels at numerous gauges other than the Kersey gauge.[7] We disagree.

At trial, all parties presented evidence of water levels in the South Platte River based on readings taken at the Kersey gauge by the State Engineer. The appellants acknowledge that prior to and during the trial no party deemed the water level readings at other gauges along the river to be significant. We find no error in the water court's exercise of discretion in declining to permit appellants to introduce additional evidence admittedly available prior to trial. *See Peterson v. Ground Water Comm'n,* 195 Colo. 508, 516, 579 P.2d 629, 634 (1978); *Deas v. Cronin,* 190 Colo. 177, 179–80, 544 P.2d 991, 993 (1976).

We also disagree with the appellants' argument that the water court erred in denying their request for relief in the nature of a writ of mandamus to compel the State Engineer to administer, in accordance with the priority system pursuant to the 1969 Act, those sand and gravel pits exempted by S.B. 120 from the augmentation requirements applicable to other wells. That argument is based on the premise that the provisions of S.B. 120 violate various constitutional rights of the appellants. We have rejected that premise.

The appellants assert that S.B. 120 constitutes retrospective legislation altering their water rights. We again disagree.

Legislation that, " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past,' " is prohibited by article II, section 11, of the Colorado Constitution. *Martin v. Board of Assessment Appeals,* 707 P.2d 348, 351 (Colo.1985) (quoting *Denver, South Park & Pac. Ry. Co. v. Woodward,* 4 Colo. 162 (1878)). *See also P-W Investments, Inc. v. City of Westminster,* 655 P.2d 1365, 1371 (Colo.1982). Although S.B. 120 establishes new procedures for ensuring that water rights are protected and creates different classes of water rights for certain owners and operators of sand and gravel pits, it does not alter the vested rights of appellants and, therefore, does not constitute retrospective legislation. *See Continental Title Co. v. Dis-*

7. The Kersey gauge is located on the South Platte River, just downstream from Greeley, Colorado.

*trict Court,* 645 P.2d 1310, 1315 (Colo.1982) (legislation that effects change that is only procedural or remedial in nature is not retrospective for purposes of art. II, § 11, of the Colorado Constitution). *See also Committee for Better Health Care v. Meyer,* 830 P.2d 884, 891 (Colo.1992).

## VII

The appellants claim that the water court erred in awarding costs of $1,010.50 to the appellees. Defendant-in-Intervention–Appellee and Cross–Appellant, the Colorado Rock Products Association, claims on cross-appeal that the water court erred in denying its request for an order requiring the appellants to reimburse it for expert witness fee expenses of approximately $40,000 as costs. We agree with the appellants' argument in part, but reject the argument of the Colorado Rock Products Association.

■ The provisions of C.R.C.P. 54(d) establish the general principles governing awards of costs in judicial proceedings as follows: [8]

> **Costs.** Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within five days thereafter, the action of the clerk may be reviewed by the court.

Costs, therefore, may not be awarded against state entities pursuant to C.R.C.P. 54(d) in the absence of express legislative authorization for such awards. *Shumate v. State Personnel Bd.,* 34 Colo.App. 393, 398, 528 P.2d 404, 407 (1974) (citing C.R.C.P. 54(d); *Dietemann v. People,* 78 Colo. 92, 239 P. 1020 (1925)).

■ A water conservancy district is "a political subdivision of the state of Colorado and a body corporate with all the powers of a public or municipal corporation." § 37–45–112(7), 15 C.R.S. (1990). Therefore, an award of costs may not be imposed against the Central Colorado District and the Lower South Platte District absent some express legislative authorization for such award. The appellees cite no statutory authority indicating an express legislative authorization for the imposition of such costs. Thus the trial court erred in awarding costs against these two appellants. Appellants the Jackson Lake Company and the Fort Morgan Company are private entities, however. The award of costs against them was authorized by C.R.C.P. 54(d).

Relying on *Barr v. Game, Fish & Parks Comm'n,* 30 Colo.App. 482, 497 P.2d 340 (1972), the appellees argue that the appellants waived their immunity from awards of costs by filing this action. *Barr* is inapposite, however. In that case the court of appeals recognized that the General Assembly had waived the immunity from awards of costs otherwise enjoyed by the Colorado Game, Fish and Parks Commission, by enacting special legislation authorizing the initiation of certain types of civil actions against said Commission and providing that in those actions the Commission would be subject to the rules of law applicable to private litigants. *Id.* at 489–90, 497 P.2d at 344.

■ We conclude that the water court did not abuse its discretion in determining that the expenses for expert witnesses employed by the Colorado Rock Products Association in connection with this case were not appropriate items for reimbursement as costs. The water court found that the election by the Colorado Rock Products Association to employ expert witnesses resulted in an expansion of the factual issues that, in the context of the case, was problematical in view of factual stipulations previously agreed upon by the other parties. The appellants suggest that any award of costs to intervening parties in declaratory judgment actions should be deemed unjust pursuant to section 13–51–114, 6A C.R.S. (1987). We disagree with this suggestion and do not view the water court's

---

8. Section 13–51–114, 6A C.R.S. (1987), also refers to awards of costs in judicial proceedings, as follows:

In any proceeding under this article [13], the court may make such award of costs as may seem equitable and just.

ruling to have been based on that premise. The water court did conclude that under all of the circumstances the expenses associated with the Colorado Rock Products Association's employment of expert witnesses should not be awarded as costs. We find no abuse of discretion in this ruling.

## VIII

For the foregoing reasons, the judgment of the water court is affirmed with the exception of its order awarding costs against appellants the Central Colorado District and the Lower South Platte District, which latter order is reversed.